By the Court :
Our statute provides, “that every person imprisoned for debt, either on mesne process, or in execution, shall be permitted and allowed the privilege of prison bounds.” The bond, in the case before us, recites that Baymiller has been arrested, and is in custody of the sheriff. But does not state that he was imprisoned. An arrest, and being in the custody of the sheriff, precede imprisonment, and are distinct and different from it. The-facts stated in the bond show that the case, in which the statute authorizes the bond to be taken, had not occurred. Baymiller was not imprisoned, but only arrested on mesne process. The sheriff, in that situation, could not legally discharge him, on taking a prison bounds bond. In doing so he permitted an escape.
The plaintiff’s counsel have cited many cases, in which bonds of this description have been sustained, though not taken strictly according to the law. But so far as we have been enabled to examine them, these bonds were taken, when, upon the circumstances attending their execution, they were legally taken. The facts existed which authorized the officer to take the bond, and the exception was to the form of the bond itself. But the ground upon which we hold this bond defective is that the officer had no authority, upon an arrest only, to accept it, and discharge the body. By doing so he could not affect the plaintiff’s,rights, who might insist upon a recaption,'or proceed against the sheriff for an escape. It was at his option to treat the bond as a nullity, but he could not by his assent give it validity.
The exception, that one bond is taken in three distinct suits, is also, in our opinion, a fatal one. The obligation is entire, and the whole penalty must remain, even if two of the suits were disposed of. It is in the nature of an appearance bail bond, and is, therefore, a part of the proceedings in the cause. For this reason it should be taken separately, so as to *be connected with the separate case to which it belongs, and separately proceeded upon, should it be forfeited. It would be vain and useless to at *262 tempt enumerating the many inconveniences which might arise from taking a joint bond, upon the execution of separate processes. The power to require such a bond might be used for very oppressive purposes. And where the statute does not authorize it, the court think they ought not to sustain it.
The plaintiff has cited two cases, in which a single bond was taken by the officer upon separate processes and held good. But we do not consider these cases analogous. In 8 Johns. 111, the exception was not taken by the counsel or noticed by the court. In stating the case, it is noticed that the bond was given upon three executions issued from a justice of the peace. We know not how far the law of New York might, in terms, warrant such a proceeding. As it formed no ground óf exception, we should infer that it was conformable to statute, or to a settled practice. However, as the point was not made nor decided upon, we can not consider the case an authority.
The case from 2 Cali, 290, was one where a forthcoming bond was taken, in two cases of suits against the securities of two separate sheriffs of the same county, under a special act of assembly directing the executions to be stayed, upon a forthcoming bond being given. The court, in their opinion, admit that it is not common to take a joint bond upon separate executions. They say the bond was so taken that neither party could be prejudiced. But they decide the cause upon the act of assembly, which they say “ rather points to one bond only.” We can not regard this case any more than the one from New York, as an authority to which our own opinions should be yielded. The unity and consistency of legal proceedings, and the safety and security of all the parties, require that a bail bond, or prison bounds bond, should be taken separately in each separate suit.
It is strongly urged by the plaintiff’s counsel that if defective as a bond under the statute, this bond is good at common law, as a voluntary bond.
The numerous cases cited to sustain this position are all essentially different from the one before us. The sheriff *takes a bond from the prisoner conditioned that he will remain a true prisoner. This is in the nature of a contract. It relieves the sheriff from an incessant vigilance, and it secures to the prisoner the enjoyment of his own time, free from the superintendence of *263 the officer. The contract is a beneficial one to both parties, and, if not prohibited by law, would be deemed valid.
In the case of a forthcoming bond, the sheriff having legally levied upon the defendant’s property, restores it to him, upon taking a bond with security for its redelivery. If taken in a proper form, and returned with the execution, in Virginia, a very summary remedy is given on such a bond. But if not thus taken, it is still deemed a good bond, and may be sued upon as in the common case of a contract. And for this reason the contract was a valid one, made fora legitimate purpose, and operating beneficially for the obligor. There is-no case where a bond is unauthorized by law, and where no. advantage can result to any one, that a bond given under the belief that it is for a legal purpose, when it is not, is held valid.
If an officer, alleging he has process, when he has not, without making an arrest, take a bond for the prison bounds, where the obligor is actually the judgment debtor of the obligee, it would clearly be a voluntary bond, yet it would- undoubtedly be inoperative, because it was taken without authority, and could, in no respect, benefit the obligor.
So, in this case, Baymiller not being in prison, the sheriff had no authority to take the bond. It was therefore voluntary. But it did not preclude the plaintiff from retaking the defendant had he chose to do so, or from proceeding against the sheriff as for an escape. Had the defendant been retaken, would the bond have been obligatory? If it would, he certainly received no advantage from it. If it would not, the reason must be that it was void from the first. There is nothing in it, by which its obligation can be made to depend upon the act of the plaintiff. In declaring this bond inoperative, we impugn none of the decisions adduced by the plaintiff in support of it; on the contrary, we conform to the principles upon which those decisions rest.
Judgment affirmed.